LOTTINGER, Judge.
This is a suit by Leonard Neuman, Jr. against B & B Pile Driving, Inc., for an alleged tort which occurred on navigable waters in the Parish of Terrebonne, State of Louisiana. The Lower Court awarded judgment in favor of defendant and dismissed petitioner’s suit. Petitioner has taken an appeal.
The facts disclose that Delta Iron Works, Inc., hereafter referred to as Delta, an independent contractor, contracted with Union Oil Company of California, Inc. to perform certain diving services in connection with the salvage of drill pipe which had been lost overboard in East Timbalayer Bay in the Parish of Terrebonne. Union Oil also contracted with another independent contractor, B & B Pile Driving Service, Inc., hereafter referred to as B & B, to perform diving services on the same salvage job. There was no privity of con *558 tract between the two independent contractors.
The petitioner, Leonard Neuman, Jr., was one of the divers supplied by Delta under the supervision of Mr. William Cunningham. Mr. Walter Duplantis was also supplied by Delta as tender for the plaintiff.' Under its contract, B & B supplied Harris Hebert as crane operator and David Valure as his helper.
The accident occurred at approximately five o’clock a. m. on December 21, 1964. At the time it was dark and the weather was foggy. The procedure being used was that the divers were working with the assistance of the tender. The tender would remain on a barge to give a visual signal across to the operator of a crane aboard another barge.
The general procedure used on the job was that the diver would enter the water, tie as many lengths of pipes, up to seven or eight, as he could put a cable around, which cable was attached to the dragline boom. The strands of pipe each had a length of about thirty feet and diameter of four inches. The diver would then come out of the water into a position of safety and his tender would signal the dragline operator that the diver was in a position of safety and that it was safe to proceed. The dragline would then lift the pipe onto a waiting barge. During this procedure, certain strands of pipe became unsecured from the cable and fell striking petitioner on the hand. As a result of the injuries, a portion of petitioner’s hand was amputated.
The petitioner filed suit in tort alleging negligence on the part of defendant’s employees. Travelers Insurance Company, the workmen’s compensation insurer of Delta Iron Works, Inc., intervened to assert its subrogation claim for compensation benefits paid petitioner. As aforesaid, the Lower Court awarded a judgment in favor of defendant and dismissed petitioner’s suit.
In its reasons for judgment, the Lower Court made the following findings:
“The fact that the drill pipe fell from the cable is of no consequence as to the proximate cause of the accident, as it was not unusual for the drill pipe to fall as they had to be secured in a loose manner by the diver. No inference is made that the diver had done anything particularly wrong, as they were required to go into the water at night and wrap a cable around jumbled up drill pipe, not knowing particularly how many would come up, or the manner in which they would come, and it was for the reason that it was dangerous and not unusual for the pipe to fall that the tender was to wait until the diver was secure before giving the signal to the crane operator to raise the drill pipe.
“Allegations have been made that defendant had an incompetent, inexperienced and negligent employee operating the dragline. The Court finds as a fact that there was no testimony to show that the operator of the crane was in any manner incompetent, inexperienced or a negligent employee. The Court is of the opinion and finds as a fact that the operator of the crane was competent and experienced.
“The Court further finds as a fact that the defendant provided the proper and necessary equipment for the salvage operation in question.
“The Court, therefore, is of the opinion that the defendant having provided and furnished proper and adequate equipment and that the operator of the crane was competent, comes then to the crucial question, and that is whether or not the operator of the crane or any other representative of the defendant was negligent which was the proximate cause of the plaintiff’s accident and injury.
*559 “Plaintiff testified that he went down normally and secured the pipe normally and was coming out of the water, climbing the ladder on the barge, when the drill pipe fell, one strand striking his hand.
“The Court is of the opinion that the first principal question is whether or not the operator of the crane was negligent, either in the manner that he raised the drill pipe or at the time that he did it. There is no evidence to support the fact that the crane operator negligently or in any manner improperly raised the drill pipe, the falling of the pipe being a consequence that could be occasionally expected and not suggestive of improper raising. The record shows that the drill pipe was raised in the normal manner.
“The question then that we must answer is whether or not proper signals had been given to the crane operator to raise the drill pipe. We must point out here one of the purposes in having a signal given from the diver’s tender to the crane operator was because the diver could not be seen by the crane operator and he had to rely exclusively on the signal of the diver’s tender. It is, therefore, crucial to determine the facts surrounding whether or not a signal was given.
“The plaintiff’s tender was Walter Du-plantis, and because of Mr. Duplantis’ failing health and although present in the Court Room, he did not testify directly, but his deposition was introduced. The plaintiff called three witnesses to testify about whether a signal was given. Harris Hebert was called and he testified that a signal was given, and that since he was the operator of the crane, he began to raise the drill pipe after receiving the signal and in obedience to the signal. The deposition of Walter Duplantis was introduced, and in his deposition he testified that he gave no signal. William Cunningham, the supervisor of the plaintiff, was also called. Mr. Cunningham testified that he had been sleeping prior to the accident and had just walked out of the sleeping quarters when the accident occurred. Mr. Cunningham was not watching particularly for a signal and admittedly was some distance away, and his testimony merely is to the effect that he did not see a signal given.
“The Court, after listening to the testimony of Mr. Cunningham, made some notes at the time that Mr. Cunningham’s testimony must be discredited and cannot be used to indicate whether a signal was or was not given.
“The defendant called one witness, David Valure, who testified that he physically observed a signal being given and that this was the customary and normal signal given by Mr. Duplantis. Mr. Valure was a helper to the crane operator. Valure further testified that in addition to the signal by Mr. Duplantis, some roughneck, who was unknown to Mr. Valure, gave a signal also to raise the drill pipe.
“The Court is of the opinion that the plaintiff has the burden of proof to prove his case to at least establish that the defendant was in some manner negligent and that this negligence was the proximate cause of his injuries. Certainly a case cannot be decided by the greater number of witnesses who testify as to one point. However, it is interesting to note that of the three witnesses who were in a position to testify as to the signal given, two said the normal signal was given and one did not testify and the Court cannot properly evaluate the demeanor of the witness who said one was given. The Court was impressed, however, by the testimony of Mr. Hebert and Mr. Valure and believes that the signal was given probably by Mr. Duplantis prematurely, but in any event it was the duty of the crane operator to raise the crane in obedience to the signal and this he followed.
“The plaintiff has further alleged that the defendant was negligent in failing to pro *560 vide adequate lighting in the salvage area. The Court will note that the defendant company had been requested to supply a crane, a crane operator and an oiler. To this request they complied. There is no negligence on behalf of the defendant in failing to provide any lighting. The Court does not pass upon the question of adequate lighting, but only states that the record does not disclose that the defendant had any duty to provide lighting.
“Plaintiff further alleges that the defendant was negligent in failing to post a lookout who could properly direct the dragline operator. The Court finds that David Valure, the assistant to the crane operator, was acting as the lookout and there is no evidence to suggest that he performed other than satisfactorily.
“The Court, therefore, is of the opinion that the sole and proximate cause of this accident was either one of two things. The first possibility is the diver’s tender giving a premature signal. The second possibility is the action of the diver himself in remaining in the water, as the testimony of some of the divers indicated they were doing, and in so remaining in the water left himself in a position of peril. The proper procedure was to have the diver on the barge in a position of safety when the drill pipe was raised, although some of them, as the record reflects, failed to do so.
“In any event, the Court is of the opinion and finds as a fact that the plaintiff has failed to carry his burden of proof and show any negligence on behalf of the defendant, or any of the defendant’s representatives and/or employees, and the claim of the plaintiff must be dismissed, with prejudice, and at his cost.”
The crane operator, Mr. Hebert, testified that, on the occasion of the accident, a signal was given by the tender and a roustabout. He described the pipe as it came out of the water as follows:
“I got the signal. I picked up the pipe, and the pipe came up. It just looked to me like it was all like this. Some of them were sliding and looked like they were slipping. They was just going all kinds of ways.”
The crane operator testified that he could not at all times see the divers when they were out of the water and about 50% of the time they remained in the water while the pipe was lifted. He stated that there was nothing different about the manner in which the pipe was raised on this occasion, but that the pipe had not been properly secured by the petitioner himself thus causing the accident.
The record discloses that the pipe had slipped on other occasions because the divers had improperly secured them. This does not necessarily mean that there was negligence on the part of the divers as, under the conditions in which they were operating, muddy and murky water, it was indeed a difficult task to properly secure the pipe. The testimony of Hebert further shows that it was his job to watch the tender of the diver for a signal. He watched him exclusively as he was the man from whom the crane operator took orders as to when to lift the pipe.
Certainly the operation, as described by petitioner, was a dangerous operation. Any time divers go six to eight feet beneath the surface of the water in mud on a foggy night to wrap a cable around a number of pieces of heavy drill pipe, not knowing how many will come up nor the manner in which they will come up and then raise them, it must be a dangerous operation.
It was shown that some of these pipes when they were pulled up by the crane were still embedded in the mud at the bottom of the water which would cause them to tilt and slip from the cable and fall back into the water. It is evident that the peti *561 tioner himself, who had wrapped the cable around the pipe which finally fell and struck him, did not have, the cable securely tied and this is actually what caused the accident and his injuries. There is no showing on the part of the petitioner that the crane itself was a dangerous instrumentality, nor that it was in any manner operated in disregard of life or property.
The real question involved here is whether or not it was Harris Hebert’s duty to make sure that the diver was in a safe position before he picked up his load of pipe. It was the testimony of the witnesses, including Mr. Hebert, that it was his duty to watch the tender for a signal. This signal was to signify that the diver was safe and that the pipe would be raised. Mr. Hebert could not always see the diver and at some times the diver remained in the water during the operation of picking up the pipe. Petitioner himself admitted that occasionally he did not come out of the water.
The purpose of the signal by the tender was to show that the diver and the tender were clear of the area and that the crane crew could take over the rest of the lift operation. Petitioner himself did not know whether a signal had been given. Witness Hebert testified that a signal was given by the petitioner’s own tender, Walter Du-plantis. David Valure testified that there were two fellows who gave the signal, namely Duplantis, the diver’s tender, gave a signal first, and the roughneck behind him who hollered that it was all right to lift the pipe.
Petitioner further contended that the crane operator was incompetent and inexperienced, and that he was not in a good physical condition at the time of the accident because of lack of sleep. Both of these contentions are completely unsupported by the facts of this case. Mr. Hebert had been operating a crane and a dragline business for several years prior to the accident. There was nothing in the evidence to disqualify him as a crane operator. Furthermore, his helper testified that he had taken some four or five hours off prior to the accident during which time he apparently slept.
The law of our State is to the effect that findings of fact by the District Court are not to be disturbed unless • manifestly erroneous. In the case of Richard v. Barker, La.App., 124 So.2d 399, the Court said:
“In cases such as this involving questions of fact, an appellate court must affirm the judgment unless there be manifest error in the conclusions of fact by the trial judge. Broussard, et al. v. Janin, et al. La.App., 62 So.2d 197; Ferguson v. Belcher & Son, 230 La. 422, 88 So.2d 806; Bindewald v. Gurtler, Hebert & Co., Inc., La.App., 112 So.2d 746.”
We agree with the conclusions of the Lower Court that no evidence of negligence was shown on the part of B & B Pile Driving, Inc. nor their employees and, accordingly, the judgment of the Lower Court will be affirmed.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.