LANDRY, Judge.
Defendant-appellant, J. H. Jenkins, Contractors, Inc. (Jenkins) appeals the judgment of the lower court awarding plaintiff, Kenneth J. McKay, judgment for $1,950.00 against defendant on an oral contract pursuant to which defendant agreed to restore plaintiff’s lawn in consideration of the use thereof for storage of defendant’s construction equipment. Defendant maintains plaintiff’s action should be dismissed because plaintiff refused to permit defendant to finish the restoration process. Alternatively, defendant contends the amount awarded to finish the restoration process is excessive and should be reduced. Plaintiff did not answer defendant’s appeal, but rather took his own devolutive appeal requesting that the award be increased to $10,000.00. We note, however, that judgment was signed herein on June 26, 1970, and notice thereof sent plaintiff that same day. We also note that bond was posted by plaintiff to perfect his appeal on December 15, 1970. Plaintiff’s appeal must therefore be dismissed for lack of jurisdiction in this court. LSA-C.C.P. art. 2087; Bulk Transport, Inc. v. General Truck Drivers, Warehousemen and Helpers Local Union No. 5 et al., La.App., 195 So.2d 159, and cases cited therein.
It is conceded that defendant agreed to restore plaintiff’s one acre front lawn. The parties disagree on whether the oral agreement required defendant to solid sod the yard or merely haul in top soil and dress, seed and fertilize the lawn. The trial court found that defendant was obligated to provide four inches of top soil and seed and fertilize the lawn which work could be accomplished at the cost indicated. We agree and affirm the judgment.
It is conceded that defendant obtained permission from plaintiff to store on the front lawn of plaintiff’s property certain construction equipment to be used by defendant in improving a canal which bordered on the side of plaintiff’s homesite. In exchange therefor defendant, through *572 its job superintendent, J. O. Benefield, agreed to restore plaintiff’s lawn. The work commenced on or about June 23, 1969. Defendant moved a large amount of steel reinforcing rods on the property and also used plaintiff’s premises to store trucks, bulldozers, cranes and other such equipment. A delay in the project resulted from plaintiff’s request for a revision in the work plan which would be beneficial to plaintiff. Upon plaintiff’s request being granted, work resumed on July 17, 1969. In late August, 1969, the work was completed and defendant moved its equipment off of plaintiff’s land. Defendant then commenced hauling in top soil preparatory to seeding and fertilizing the lawn. Plaintiff, dissatisfied with the appearance of his yard, stopped the work and filed suit.
In essence, plaintiff testified that Bene-field agreed that plaintiff would be provided a quality lawn when construction was completed. The work was to consist of bringing in four inches of top soil, seeding and fertilizing the lawn. However, when construction was delayed, it became evident that solid sodding was the only method that would provide a lawn by the end of the current growing season. Plaintiff so informed Benefield in August, 1969, and according to plaintiff, Benefield later told plaintiff that J. H. Jenkins, Sr. consented to solid sodding and that Benefield also informed plaintiff that the yard would “look like a golf green” when the job was finished. Plaintiff attempted several times to contact the elder Jenkins but without success. In September, 1969, plaintiff contacted Buddy Jenkins who requested plaintiff to secure estimates as to the cost of solid sodding. Plaintiff obtained an estimate of $10,000.00 to $11,000.00 from Hart’s nursery. Plaintiff concedes that in September, 1969, he wrote defendant a letter stating it was his understanding that the lawn project would involve the furnishing of top soil to be followed by seeding and fertilizing. According to plaintiff, defendant subsequently leveled the yard, removed a circular gravel drive, brought in four loads of top soil and began seeding. When plaintiff perceived that the amount of top soil hauled in was totally insufficient and that defendant failed to remove debris from the fill, plaintiff stopped the work.
Mr. Benefield admitted the verbal contract to restore plaintiff’s lawn. He testified the agreement was that defendant would remove a large stump from plaintiff’s lawn, fill the cavity, dump dirt excavated from the canal on the rear of plaintiff’s lot where it was low, place approximately three inches of top soil on the front lawn and seed and fertilize the yard. He acknowledged that he promised plaintiff the yard would look like a golf course when he finished. He also stated that about three weeks after work commenced, plaintiff requested that solid sod be applied to the lawn. Benefield advised plaintiff that he, Benefield, had no authority to make such an offer, but would take the matter up with the Jenkins, his employers. A few days thereafter plaintiff again asked about the solid sodding and Bene-field replied that he had not yet heard anything from his superiors. Benefield further stated that he promised plaintiff only mulch sod. He admitted, however, that he could have promised solid sod.
Mr. Calvin Comeaux, engineer in the employ of Gulf States Utilities, and Mr. J. H. Rogillio, employee of the City-Parish government, were present when the agreement was made between plaintiff and Bene-field. They both testified in substance that Benefield agreed to level, fill and seed plaintiff’s lawn in exchange for the use of the premises.
Mr. J. H. Jenkins, Sr., President of Jenkins, testified that he at all times intended to restore plaintiff’s lawn by seeding and fertilizing. He acknowledged that Bene-field was Jenkins’ job superintendent, but denied that Benefield was authorized to promise or offer plaintiff solid sodding. He also stated that he observed that plaintiff’s lawn was nicely graded before seed *573 ing began, but that plaintiff refused to allow Jenkins’ employees to finish the work.
Ralph C. (Buddy) Jenkins, Vice President of Jenkins, testified that in late August or early September, 1969, plaintiff called and requested that his lawn be restored with solid sod. Jenkins requested estimates of such cost. Upon receiving an estimate of approximately $10,000.00, Jenkins advised plaintiff that top soil, seed and fertilizer were all that Jenkins could and would provide. He further informed plaintiff that if reseeding in the following spring became necessary, Jenkins would provide this service at no additional cost to plaintiff. Jenkins also stated that restoration of the lawn was commenced by hauling in approximately 250 yards of dirt. A bulldozer was then used to spread the dirt. Leveling was done with the use of a small farm tractor equipped with a box designed to dress the soil. He stated further that his employees were in the process of finishing the work when plaintiff ordered them off the premises.
Mr. Andrew Hart, owner, Hart’s Nursery, testified he examined plaintiff’s lawn and found that it needed discing because the ground was heavily compacted by the ponderous equipment that had been stored thereon. He considered the preparatory work by defendant to be inadequate for seeding and fertilizing. He estimated that solid sodding would cost $11,937.50, but that the lawn would first have to be prepared by hauling in four inches of top soil which would cost $1,750.00. Hart also noted that the cost of seeding and fertilizing would be $200.00. He confirmed that in the Baton Rouge area the growing season extends from March or April until September or October each year.
Mr. John R. Doucet, a commercial landscaping and sodding expert, testified he examined subject lawn, and found that it required discing, two inches of top soil, seeding and rolling. He estimated the cost of this procedure at between $1,000.00 and $1,100.00. Doucet also testified that plaintiff’s lawn could be solid sodded for $5,-750.00 or spot sodded at a cost of $2,800.00.
Considering the procedural posture of this case as above shown, we are limited in this review to determining whether the trial court erred in (1) finding that plaintiff bore the burden of establishing an agreement to provide four inches of top soil; (2) holding that defendant had not fulfilled its obligation; (3) declining to hold that defendant’s obligation was extinguished when plaintiff prevented completion of the work, and (4) failing to allow defendant an offset for work already performed.
In support of its contentions appellant cites numerous authorities establishing such applicable rules as: (1) a claimant must establish the existence and terms of a contract sued upon; (2) one seeking to show modification of a contract must show that the party sought to be held consented to the revision; (3) one seeking to hold a principal for the acts of the agent must show that the agent had authority to bind the principal, and (4) that one dealing with an agent must ascertain whether the agreement made falls within the agent’s sphere of authority. We acknowledge the applicability of the foregoing principles. We add the equally pertinent rule that instances of this matter are purely factual determinations and that each must be determined in the light of its own peculiar facts and circumstances.
That an oral agreement was perfected between plaintiff and Benefield is readily conceded by the parties. Benefield acknowledges having promised to provide three inches of top soil, seed and fertilizer to restore the lawn. Benefield also conceded his promise to provide mulch sod and a lawn similar to a golf course. Moreover, Comeaux and Rogillio testified that the conversation overheard between Benefield and plaintiff was to the effect that Benefield would grade and seed the lawn and leave it in as good a condition as it was before. Neither witness heard any mention of solid sodding.
*574 The record establishes beyond doubt that Benefield had no authority to bind defendant to an agreement which called for solid sodding. Benefield himself concedes he had no such authority. The testimony of Jenkins’ officers confirms that such authority was lacking. Plaintiff acknowledges that no officer of defendant corporation ever agreed to solidly sod plaintiff’s lawn. Notwithstanding plaintiff’s claim to a contract calling for solid sodding, plaintiff in September, 1969, acknowledged in writing that top soil, seeding and fertilizing was an acceptable process. We find, as did the trial court, that defendant, through its agent, offered to haul in top soil and seed and fertilize the yard to provide a quality lawn.
The testimony of the experts, Hart and Doucet, establishes that the type of lawn plaintiff was promised required disc-ing, the addition of four inches of top soil, proper dressing, seeding and fertilizing. Both witnesses testified that the preparation performed by defendant was inadequate in that insufficient top soil was hauled in and the ground was not properly prepared before seeding. In view of Bene-field conceding his agreement 'to furnish sufficient top soil for a quality lawn, we concur in the trial court finding that defendant is obligated to furnish four inches of top soil.
The record establishes that the hauling, seeding and fertilizing undertaken by defendant consumed but a few hours. The testimony of the experts, Hart and Doucet, confirm that the lawn was seeded without adequate preparation. It further appears that the work performed by defendant was of very little, if any, benefit to plaintiff, and that it most certainly did not result in a quality lawn. It also appears that defendant’s employees completed their seeding and fertilizing operations the day after plaintiff ordered them off his property. Although defendant attested an intent to do additional work on the lawn, it is clear from the record that defendant did not intend to haul in sufficient top soil to cover the entire lawn to a depth of four inches. It further appears that defendant had practically completed his efforts when plaintiff ordered a cessation. Nor can we say that plaintiff was unreasonable in stopping the seeding operation which was being conducted before the ground was properly prepared.
It is well settled that the factual determinations of the trier of facts will not be disturbed unless found to be manifestly erroneous. Neuman v. B. & B. Pile Driving, Inc., La.App., 232 So.2d 557. We find no error whatsoever in the conclusions reached below.
The judgment of the trial court is affirmed at the cost of appellant, J. H. Jenkins Contractors, Inc.; all costs of these proceedings to be paid by Jenkins.
Affirmed.